Please be seated, ladies and gentlemen. Good morning. We have five cases on the calendar this morning. Two patent cases from the district court, a patent case from the PTO, two government employee cases, one of which has been submitted in the briefs and will not be argued. First case is FairWarning v. Iatric Systems, 2015-1985, Mr. Pacino. Thank you, Your Honor. May it be so. The district court made findings of fact that the invention, the 500 patent, was not necessarily rooted in computer technology. These findings were incorrect, not supported by the complaint or other pleadings, and there's no real-world analog. There's zero evidence. So let's cut right to the claim, which is what it's all about. This is a method comprising generating a rule, applying the rule, and storing a hit. Why isn't that pretty abstract? Your Honor, in the context of the audit logs, this isn't abstract. The generating is done by the computer. There's no dispute on that. But just adding a computer to an abstract method doesn't pass 101 muster. We appreciate that it doesn't pass 101 muster, Your Honor. However, what we're doing is applying a rule in a manner that hasn't been done before in a way to achieve a result, to have a more securable system, potentially mitigate against losses that can be financial, economic, or personal. What do you think the trial judge understood as an abstract idea? What was the understanding between you and the trial judge as to exactly what is an abstract idea? I don't think there was ever any articulation other than the judge's order, Your Honor. Other than the judge's order, I don't think there was ever any understanding between us and the judge. Well, surely the judge wouldn't rule it's an abstract idea without knowing what an abstract idea is. Right. I appreciate your position, Your Honor. But the abstract idea here was so general, you might as well have said it was a method. That there was no distinction between saying a paradigm. Well, methods are not abstract ideas. We have lots of method patents. Right, but a method is a paradigm abstract, just like chess or machine. These things are abstract until we have some reflection of what is described in the claims, Your Honor. What do you think is an abstract idea if the judge didn't have an idea? What did you have as an idea? In this particular case, the abstract would be applying the rules in order to provide a more securable system, Your Honor. Well, I have a problem, as Judge Lurie alluded to, with the rule. What does it mean? It kept talking about the invention was to create a rule. What does that mean? Creating the rule is kind of like the Arrhenius equation here, in the sense that the rule is related to the auto log data and the information in the auto log, and using that information to determine whether across multiple applications is a problem being solved. Is it an algorithm, instructions for the computer to carry out? Is the rule an algorithm? I think at the computer level, it can be considered like an algorithm. Could it be something as simple as whenever a user accesses a particular kind of database, the rule will be triggered? Like the rule is whenever somebody accesses this database, then we're going to... I don't think so. But it could be as simple as that, couldn't it, since rule is pretty broad? Applying a rule to the activity, the application is executed and there's some activity in a computer environment. And at that time, that information is created for multiple applications, for example. And across multiple applications, the inventor realized that there was no mechanism in place to monitor activity in the electronic environment across multiple applications. And what his solution is, and you could find out, Your Honor, at 25. I'm not familiar with that. I don't see it in the claim though. Where is it in the claim, the idea of across various applications? Your Honor, it's not recited in a claim across various applications. However, that is a problem that was being processed. There was also further problems that you could access different data stores or you could access through different means, through different login names, through different mechanisms of that nature. And what Inventor Long realized is that there was no means to detect across multiple applications and for a given user. Help me understand exactly what is it the trial judge did wrong other than rule against you? I think the trial judge made determinations of fact that this wasn't in the computer environment. Well, it clearly is in a computer environment. Does that make it abstract? Isn't this invention clearly part of the computer environment? Right, but we're actually using the rules to achieve a result to get a more secure of a system, Your Honor. By having this information, you're able to secure the system and to mitigate against potential loss, whether economic, financial, emotional, personal losses. And so what Inventor Long had realized is that looking at one application or activity in one application wasn't sufficient to capture all the activities that were occurring. It could be Are you saying that there isn't an abstraction here or that there's something more? Your Honor, to the extent I'm asked to say there's an abstraction, I would say it would be applying the rules to audit log data. And in order, in this case, we're achieving a result to something more as we're targeting specific users, an authorized user, and nobody had applied the audit log data in this manner before. Well, it's a two-step process, right? The first step is, is the patent directed to an abstract idea, whatever that may mean. Is that where your problem is, or are you in step two? I think we have a problem at both levels, Your Honor. You have problems with both of them? Right, at the beginning level, if you're saying that, in this case, it was looking at human activity, that doesn't reflect the claims, because in this case, the audit log reflects the electronic trail of activities that are executed in a computer environment. And that is not like the human activity. And the failure to appreciate that distinction, Your Honor, may have stifled the community, but not Inventor Long, who actually was able to apply these rules in a manner which hadn't been applied before in order to achieve a result, which was to make the system more secureable to help mitigate against these I'm sorry for interrupting, but so the district court said that the abstract idea is the concept of analyzing records of human activity to detect suspicious behavior, right? And so you're saying that you think that there is a misunderstanding there, because it should be instead directed to the idea of analyzing electronic records. You're looking at the trail of activities that are executed in a computer environment, Your Honor. And I think that's a little different. And with such a sweeping statement of the abstract idea, I submit it's no different than saying this would have been a method. And it's effectively reading out the statute that does allow improvements based on old combinations of methods, such as improvements in section 101. You think this is an improvement patent? Is that your idea? I think this improves on what had been done before in the field. Nobody had been applying the audit law data in this manner, Your Honor. Wouldn't the other patents that you're improving also be invalid as abstract ideas if they're all on the same subject matter? I'm not following the rationale here. Well, if you're improving a prior invention, there are at least two other patents in the background, right? Yes, Your Honor. And this is an improvement on those ideas, right? It's an improvement, yes, Your Honor. So if your improvement is invalid because it's an abstract idea, doesn't that by definition make those other patents invalid by definition? I don't know how you can improve... We're not improving the abstract idea, Your Honor. We're looking at the actual underlyings of the system. Okay. Your Honor, it's not like we're looking for snooze. It's not like Columbo or somebody of that nature got a computer. This is an information security specialist who understood the electronic systems and electric computers and environments. Nobody had looked at these autolog data and applied them in this manner. And nobody understood how to look at multiple applications. If you have apps on your phone or applications on your phone, you'll be able to look and see activity across multiple applications. Nobody had done that before. And in this case, that's the problem that had been solved. And I don't think IATRIC has disputed that in the red brief at all. And I think what they characterized the invention as was a business method. And this is a technical solution, Your Honor. I think one of the other things they pointed out is that idea of across applications is not in your claims. So how do you respond to that? When you're talking about how what makes this different or makes this something that is a specific solution to a problem in the computer environment, you keep on mentioning that it's across various applications. That's where the technical aspect is that makes it something that was difficult to do as a technical matter. But where is that in the claim? I think the fact that nobody has done this before, the claims are broader than just across multiple applications. I don't think there's any language that says two applications or more are required, Your Honor. I think we're maybe delving into some concepts from the obviousness and the secondary considerations. I understand what you're saying. But when the claim isn't telling us more than it's a rule for monitoring audit log data, that's pretty broad with respect to whether we're looking at an abstract idea or not with 101. And so I don't know if it's helpful to then look to the spec and say, oh, well, there's this specific technical problem we're trying to solve if it's not in the claim. Right. Your Honor, the application of the rule to the audit log data is in the claim. And that was the solution. And nobody had applied the rule to the audit log data before. And then that's what allowed Kurt to, excuse me, Venner Long to be able to detect, monitor what is being executed across multiple applications. What's the best case that you can cite that you are the closest to that has upheld a patent like this? My understanding in recent times, there's only been one case, CDR, Your Honor. But before that, in Deere. In Deere, the improvement was the thermocouple, being able to detect the temperature of the curing polymer inside the mold. Deere, of course, was pre-ALICE, if we can say that. It's kind of hard to evaluate the significance of Deere. You're into your rebuttal time. Would you like to save it? I'd like to save rebuttal time. We will do that. Mr. Tittemore. Mr. Tittemore, let's start out with the same set of questions that I started out with your colleague, which is, you think this is an abstract idea. At least the judge thought it was an abstract idea. Yes, sir. And you're going to defend that proposition. Yes, Your Honor. Would you explain to the court what you understand, A, to be an idea, and B, to be an abstract idea? Certainly. Going back to your earlier question, I think that what the court understood an abstract idea to be was something that could be done in mental steps in the human mind. And that is what the district court looked at, and looked at these claims, and was able to see that the claims talked about some general criteria that could be used for generating a rule, which could be done by a human in the specification it talked about. It could be done by a consultant, or it could be done by the computer. Are you on the word idea, or are you on the word abstract, or are you on something blended? I'm on the concept that this is an abstract idea, and the district court looked at that, and looked at the claims, was focused on what was in the claims. Let's begin with the first proposition, which is that under step one, we have to conclude that this whole thing, including all of the claims, because if any one claim is not directed to an abstract idea, then the trial court was wrong. So first of all, the idea of idea. What do you think an idea is? Something in the head. Correct. A thought. Yes. And that's why the judge and the district court was focused on mental steps. All of these claims are thoughts. Yes, correct. Thoughts plus computer. Thank you. Thoughts plus computer. But we know from Alice that adding a computer doesn't save these claims. What's the opposite of an abstract idea? A tangible idea? And so what is a tangible idea? An idea that has been reduced to practice in the form of a transformation or machine? Yes, we have to look to see an instantiation of the idea. So we have to look to see how the idea has been applied in the claims to, in the context of a computer environment, change the function of the computer itself. Why doesn't, excuse me, why doesn't the, meet the DDR test? Well, DDR was a different situation. DDR was a situation where the claims themselves specifically talked about using a hyperlink that would change the way that the computer normally operated. So that instead of being taken away from the web page, you would retain that information. As they change the way, is that guided by software? Or is it by the construction of the computer? Physical construction. I believe that in DDR, they were talking about software. And in this case, they're talking about software. Because if you look at the claimed invention, it says, according to one embodiment, a system and method are provided for tracking a user across logs. Well, logs are physical, are kept in a physical form, aren't they? It's software that keeps a record. Isn't that what a log is? Yes. Yeah. It's a record of something that's kept in a computer. The fact that it uses a computer, that makes it abstract? No, what makes it abstract... Well, just answer my question. The fact that it uses a computer doesn't make it abstract? No. Okay, so according to one embodiment, a system and method are provided for tracking a user across logs at an application layer of various applications that a user may access. Well, it's a lot of words. It may be that the problem with this invention, these claims, are it doesn't meet the requirements of 112. Because 112 does say that the specification shall conclude with one or more claims, particularly pointing out and distinctly claiming the subject matter which the inventor regards. It may be that their words don't quite do the job. But I'm not technically as skilled, I'm sure, as you are. But I understand what they're trying to do. What they're trying to do is set up a system that will go into the logs that record people's medical care. And in their system, they're trying to say, let's look at it in terms of time. Let's look at it in terms of number of entries, etc, etc. And let's see if we can figure out whether there's an abuse indicated by the way in which that log is being reviewed by someone using a computer. Isn't that what the invention is? That's generally my understanding. But the issue is that... Seems to me that's a very practical set of ideas. Now, the idea... Well, I shouldn't say set of ideas. That's a very practical thing they're trying to do. They're trying to create a program, a method. And if you look, for example, which there is one claim in particular, which seems to me to be kind of troublesome from the judge's viewpoint. It's pretty specific as to exactly what you're supposed to do with all this information. And they're using off-the-shelf hardware, admittedly, apparently. Although it may be a specially programmed computer. I don't know the difference, frankly, between a general computer that's given instructions and a special program computer that's given instructions to have a special program. I've never figured that out. You understand it better than I do. But either way, it seems to me what they're trying to do is a practical activity of evaluating how often there is a record in the log that that particular individual's health record has been accessed unusually a number of times. What is abstract about that? Help me understand what you understand is abstract. Sure. So what I understand is abstract is that the claims... This court in Accenture observed that we must look to the claims, not to the specification. And maybe there is a 112 issue, but there's also a 101 issue here. Because when you look at the claims, the claims are talking generally about the concept of taking some criteria, generating a rule, applying the rule, and storing a hit in memory. And this is just the general idea of looking at human activity, whether it's human activity that was recorded electronically or human activity that was recorded on paper. The idea is what is in the claims. It's this idea of looking at this kind of data. Have you ever seen a patent that didn't have an idea in it? I think that all patents have ideas in them. But I would agree with that. I bothered to look up a dictionary definition of abstract, and it says denoting something that is immaterial, conceptual, or nonspecific as an idea or quality. A lot of specific use of logs and records. But I think this case is no different than many other cases that this court has heard. I think this is very similar to the situation in the Accenture case. Where the patent applied information to rules to determine tasks that were going to be used in the processing of insurance claims. I think it's very similar to Ultramarshall. Is it your thought that there are a lot of very smart, good ideas that are just ideas? And therefore, if only supplemented with a computer in a standard way, don't meet the current test? Correct. We have to look at what the Supreme Court did in Alice, and we have to understand what that means for taking an abstract idea and saying apply it on a computer. And that's no longer enough. If somebody came up with an idea for a new combination of chemical elements and said, let's work it out through computer programs that would show us exactly how the balance is going to come out. And they patented that. You would say that's an abstract idea? It would depend what the claims said. If the claims were that broadly written, I think that might be an abstract idea. If it was a method of determining what the ratio of the atoms in the compound would be, maybe that's abstraction. But if it's the result of the composition containing a particular ratio, that's composition of matter. And I suppose it would depend on whether or not that had already been known in that field or not. That's 102. Well, to some degree, when we're looking at 101, we're also looking at whether there is an inventive concept that's involved. So it's not the same thing as 102 or 103, but there is that aspect that comes in in 101. Let's assume I want to patent an improvement on teaching swimming. And what I have come up with is an improved way to teach swimming. You get a pool. It has to be at least four feet deep so people don't hurt themselves. You have a student and you have a teacher, and the teacher says to the student, jump in the water and move your arms and legs. And I write a series of claims explaining how that works. How you're supposed to have a pool, and you're supposed to have students who understand the language, etc. Would you say that's an abstract idea? That patent is an abstract idea? It's a bad patent for a variety of reasons, but it's hardly abstract, do you think? Well, the claims are about teaching... The claims say... A method for improved teaching of swimming. Comprising a pool and a student. All those things, and a student who is at least two feet tall and has two arms and two legs. And the method ultimately is to the student, jump in and move your arms and legs. Certainly not abstract. There's nothing abstract about that, is there? It's a crappy patent, but there's nothing abstract about it. Right? Probably not. Okay, good. That's helpful. We know it when we see it, don't we? Yes, your honor. Okay, thank you. Earlier you said an abstract idea is something that you would do in your mind. Is that... What about the fact that your adversary has pointed out that this isn't something that one could just do in their mind? Instead, it isn't something you could do with a pen and paper. It's not something, you know, accessing these files and all the computations that are required is not something that a person could do in their head. Well, the issue is that you have to look at the claims and what the claims are talking about. And this court's precedent has made pretty clear that even claims that require the use of a computer, you can still find that the underlying invention that's claimed is something that could be performed in the human mind. And that's what the district court did. And that's what I was talking, you know, I was starting to talk about at the very beginning about the way that the district court looked at these different claims and said, okay, so we're applying rules to, you know, data about user activity. And we're going to see if there's a hit. And all these are things that could be done in the human mind. And, you know, anyone doing any kind of auditing in medical records could do that in their mind. To look, to see, are certain criteria met? Okay, it's met. All right, now I'm going to note that down on my paper. They'd have to use the computer. You'd have to use the tangible computer in order to be able to access those files to look at all that data, right? I mean, there's no doubt that the claim is talking about doing this on a computer. It's a specific environment. Right, but even if some physical steps are required to get the information from the database, like, you know, printing something from the database, that kind of data gathering is not enough. I mean, we know that from the CyberSource case that talked about that. That said that those kinds of mental steps were not patent eligible. And CyberSource is a very similar case. In the sense that CyberSource was also looking at a method of detecting fraud in credit card transactions over the internet. And so it was looking at internet addresses and taking the internet addresses and creating a map and then using that map to determine— So if that's abstract, this is certainly abstract, isn't it? Now, there's always a possibility that was wrong, but that's besides the view. Go to Claim 14 for us. Can you look at Claim 14 for a minute? Yes. Claim 14 is a non-transitory— that language was put in at the request of the examiner because the examiner thought that saved it from being abstract. Okay, I'm glad the examiner thought so. A non-transitory computer-readable medium What do those words mean? What does a computer-readable medium mean to you? Is that like a disk or a hard drive or something? Yes. It's a thing, right? Thumb drive. Thumb drive. Could be any number of those things. Okay, but it's a thing. I could hold it in your hand. A non-transitory computer-readable medium with computer-executable instructions embodied thereon for performing a method of detecting improper access of a patient's protected health information in a healthcare system computing environment. And then it goes on and on and on with the usual words. Is that abstract in your view? Yes, under Alice. Pardon? What is it under Alice? What is it in Alice that says that's abstract? The court has specifically said that system claims and computer-readable medium claims that don't add anything besides a reference to computer-readable medium are no different than the impermissible method claim. In other words, the medium is equivalent to the method? Yes. Yes, your honor. I did also want to just quickly address one point. Well, quickly. I didn't give you fair warning, but your time is up. And so we'll hear rebuttal from Mr. Pacino. Your honor, returning to the question about what case is closest, and this is going to be in the post, Alice, would be DDR. And we had explained why the problem exists in a computer environment, that there's multiple applications, that the username, the identity of different data stores, they existed. And I don't think that's been disputed. And furthermore, the solution is within the auto log data. And it's been done long and testified, yes, these exist exclusively in a computer environment. And measure the activities that are executed in a computer environment. We think this falls directly under the rationale of DDR. And in all honesty, your honor, as far as I could tell, that's the only case post Alice that this court has affirmed the patentability of claims under section 101. Returning to Alice, if Alice at the Supreme Court, there was a stipulation about the computer readable medium claims and the method claims as standing and falling together. And here we don't think that the method itself would be unpatentable under Alice or any other test. And for that reason, it should be patentable in and of itself. Just to clarify, are you saying all the claims stand and fall together? No, I think we argued the method and the system claims separately. But we didn't, in all fairness, argue the CRM claims differently than the method claims, to be honest with you, your honor. So we put the method as CRM, similar to Alice. But I don't think Alice is probative in that regard. If there's nothing further, we'll take the case under advisement. Thank you. Thank you, your honor. Next case. Please ceremonially sit and let me announce.